UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LOCAL UNION 513 PENSION FUND, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:15-CV-01322 JAR |
| | ) |
| SUSIE'S CONSTRUCTION, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiffs, Local Union 513 Pension Fund ("Pension Fund") and one of its Trustees, filed this action seeking to collect a withdrawal liability assessment under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §1381, *et seq.* ("MPPAA"). Defendants are Susie's Construction, Inc. ("Susie's"), an administratively dissolved Missouri corporation, and its former officers, Susie York and Bud (Myson) York (collectively "Defendants"). Plaintiffs move for summary judgment. (Doc. No. 11) The motion is fully briefed and ready for disposition.

   **I.   Facts**

The Pension Fund is an employee benefit plan within the meaning of Sections 3(1) and (3) and (37), 502 and 515 of ERISA, 29 U.S.C. §§1002(1), (3), (37), 1132 and 1145; Patrick P. Kammer is the duly designated and acting Trustee of the Pension Fund. (Complaint, Doc. No. 1 at ¶ 1) Susie's was administratively dissolved by the Missouri Secretary of State in 1998. (Plaintiffs' Statement of Undisputed Facts ("SOF"), Doc. No. 12 at ¶¶ 14-15) At the time Susie's

was administratively dissolved, its President was Susie York and its Vice President was Bud York. (Id. at ¶¶ 16-17)

It is undisputed that Susie's was party to a series of collective bargaining agreements with the International Union of Operating Engineers, Local Union 513 ("the Union"), covering the period May 1, 1995 through April 31, 2014. (SOF at ¶ 2) These collective bargaining agreements required Susie's to, *inter alia*, make contributions to the Pension Fund on the basis of all hours worked by covered employees. (SOF at ¶ 3) Susie's withdrew from the Pension Fund as of March 31, 2009. (SOF at ¶ 4) Plaintiffs have calculated the withdrawal liability assessable to Susie's based upon a complete withdrawal from the Pension Fund as of March 31, 2009, at $20,861.00. (SOF at ¶¶ 8-9)

On December 1, 2014, Plaintiffs sent a letter to Defendants, received by Susie York on December 4, 2014, notifying them that Defendants (and all trades or business under common control with Defendants) were subject to withdrawal liability in the total amount of $20,861.00 determined on November 17, 2014. The letter provided an amortization schedule comprised of three (3) quarterly payments of $6,948.15, and one final payment of $16.54. The first monthly payment was due January 1, 2015. (SOF at ¶¶ 8-9)

Defendants did not respond to the December 1, 2014 letter. (SOF at ¶ 10) Defendants failed to request the Pension Fund review its assessment within ninety (90) days of receiving notice of withdrawal liability, which ended on March 4, 2015. (SOF at ¶ 12) Defendants also failed to demand arbitration of the withdrawal liability assessment. (Id.) At no point has Susie's paid any of the assessed withdrawal liability, either in a lump sum or quarterly payments. (SOF at ¶¶ 11, 13) On June 12, 2015, Plaintiffs gave written notice to Defendants that it had failed to make the scheduled withdrawal liability payments. (SOF at ¶ 18) Plaintiffs filed this action on

August 26, 2015 to collect unpaid interim withdrawal liability payments and enjoin violations of ERISA and an employee benefit plan.

## II. Legal standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

## III. Discussion

### A. ERISA and MPPAA - Statutory scheme

ERISA was enacted in 1974 to ensure that employees who were promised pension benefits would receive those benefits on retirement. PACE Indus. Union-Mgmt. Pension Fund v. Troy Rubber Engraving Co., 805 F. Supp. 2d 451, 456-57 (M.D. Tenn. 2011) (citing Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund, 852 F.2d 156, 158 (6th Cir. 1988). ERISA was amended in 1980 by the MPPAA, which responded to the problem of employers withdrawing from multiemployer pension plans when diminishing overall

participation forced remaining employers to contribute at a higher level in order to meet the funds' past liabilities. Id. To address this problem, "[t]he MPPAA requires employers who withdraw, completely or partially, from a multiemployer pension plan to contribute to the plan a proportionate share of the unfunded, vested benefits." Id.

Relevant to this case, "complete withdrawal" is "when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). The amount of an employer's withdrawal liability is determined by a plan's trustees, who must show the employer was obligated to contribute to the plan under a collective bargaining agreement and that the employer has withdrawn from the plan. 29 U.S.C. §§ 1382, 1392(a). The amount of the withdrawal liability is determined according to a formula provided in 29 U.S.C. §§ 1381(b) and 1391. Once the employer's withdrawal liability is determined, the plan sponsor must, "as soon as practicable," notify the employer of the amount of liability and make a demand for payment. 29 U.S.C. §§ 1382, 1399(b)(1).

After receiving notice of withdrawal liability, the employer has ninety days to (i) request that the plan sponsor review "any specific matter" regarding the liability and payment schedule determination, (ii) "identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer," and (iii) provide the plan sponsor additional information. § 1399(b)(2)(A). If there is "any dispute … concerning a determination made under sections 1381 through 1399 of this title," either party may initiate arbitration "within a 60-day period after the earlier of (A) the date of notification [of the plan sponsor's response to the request for review] …, or (B) 120 days after the date of the employer's request [for review]." §

1401(a)(1). Alternatively, the parties may jointly initiate arbitration within 180 days of the initial demand for payment. Id.

These provisions set up a system in which "[arbitration] is the preferred method of dispute resolution ... and normally the initial step preceding judicial intervention." PACE Indus., 805 F. Supp. 2d at 457 (quoting Mason & Dixon Tank Lines, 852 F.2d at 163). Interim payments must be made during the pendency of any such dispute, § 1399(c)(2), and if arbitration is not initiated, then the liability amount is "due and owing" pursuant to the schedule determined by the plan sponsor and may be collected by an action in a court of competent jurisdiction, § 1401(b)(1). The employer's failure to make a payment when due, and further failure to cure that delinquency, constitutes "default," and entitles the plan sponsor to the full and immediate payment of the outstanding amount of withdrawal liability plus accrued interest. § 1399(c)(5).

### B. Arguments of the parties

Plaintiffs move for summary judgment on two grounds: (i) Defendants failed to timely request arbitration as required by the MPPAA, and thus waived any defenses to the withdrawal liability assessment (Doc. No. 13 at 4-5); and (ii) Defendants failed to make the interim quarterly payments required by the MPPAA, and as a result of this default are liable for the full amount of the assessment (id. at 6). Plaintiffs contend the Yorks are jointly and severally liable for purposes of withdrawal liability pursuant to § 351.486 RS Mo. (Doc. No. 13 at 5-6)

In response, Defendants assert a defense of laches, estoppel and unclean hands, arguing that Plaintiffs are barred from collecting withdrawal payments because they failed to provide notice and demand for payment of withdrawal liability until five and a half years after the withdrawal occurred, in violation of the MPPAA's requirement that a plan provide such notice "as soon as practicable" after withdrawal. (Doc. No. 22 at 2) Defendants claim that in 2009, the

business agent for the Union assured them that a $3,037.13 check Bud York wrote to the Union was the final payment for all amounts Susie's owed to the Union. (Id.) Defendants contend this assurance, combined with the delay in making any further demand for payment, led them to believe their involvement with the Union was over and to "move[] on with their lives" without making allowances for the amounts sought in this lawsuit. (Id. at 2-3) Plaintiffs reply that any reference to the alleged actions of the Union have no bearing on this action as the Union is not a party. (Doc. No. 26 at 2)

### C. Liability

To prevail on their collection claim, Plaintiffs must show that: "(1) the Fund was a multiemployer pension plan ... and the Defendants were an employer for the purposes of ERISA, (2) the Fund notified the Defendants of their assessed liability, and (3) Defendants failed to timely initiate arbitration." PACE Indus., 805 F. Supp. 2d at 458 (M.D. Tenn. 2011) (quoting Hancock v. Cook Cnty. Waste & Recycling, Inc., No. 09–cv–212, 2010 WL 1416978, at *7 (N.D. Ill. Apr. 5, 2010) (quoting Chicago Truck Drivers v. El Paso CGP Co., 525 F.3d 591, 598 (7th Cir. 2008) (internal quotation marks omitted)). Neither side disputes that Defendants (an employer) completely withdrew from the Pension Fund (a multiemployer pension plan), that the Pension Fund provided and Defendants received notice of their liability and a demand for payment, and that arbitration never took place to contest the Pension Fund's liability assessment. There is also no dispute that Defendants have not paid the liability. Thus, on these facts, Plaintiffs are arguably entitled to collect the entire withdrawal liability amount they assessed against Defendants and that has now gone into default. The question for the Court is whether Defendants may raise a defense regarding the timing of Plaintiffs' notice of liability and demand for payment. Id. at 458.

Under ERISA, as amended by the MPPAA, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Failure to initiate arbitration in a timely manner constitutes a waiver of any defenses a withdrawing employer may have concerning the fact and amount of withdrawal liability. PACE, 805 F. Supp.2d at 465 (citing cases); Brown v. Capital Restoration & Painting Co., No. 4:13CV00189 RWS, 2013 WL 6230101, at *3 (E.D. Mo. Dec. 2, 2013) (citations omitted).

A defense of laches may apply to a claim that a plan did not notify an employer "as soon as practicable" after withdrawal; however, the issue must be arbitrated. See Bay Area Laundry, 522 U.S. at 205 ("[I]f an employer believes the trustees have failed to comply with their 'as soon as practicable' responsibility, the employer may assert that violation as a laches objection at an arbitration contesting the withdrawal liability assessment."). As suggested by Bay Area Laundry, several courts have held that arbitration is the appropriate forum for a laches defense to MPPAA withdrawal liability, and based on that principle have further held that an employer who fails to demand arbitration waives its laches defense.

For example, in Vaughn v. Sexton, 975 F.2d 498, 501-02 (8th Cir. 1992), the Eighth Circuit determined that by failing to request arbitration, the employer waived laches as a defense to payment even though the pension plan did not notify it of its withdrawal liability assessment until almost four years after the liability was triggered. Like in Vaughn, Defendants' laches defense focuses on the delay in notifying them of their withdrawal liability. Because Defendants failed to initiate arbitration, the laches defense is waived. See also Giroux Bros. Transp., Inc. v. New England Teamsters & Trucking Industry Pension Fund, 73 F.3d 1, 3-4 (1st Cir. 1996) ("questions concerning the timeliness of a plan sponsor's demand are governed exclusively by §

1399(b)(1)" and must be submitted to arbitration); Operating Engineers' Pension Trust Fund v. Clark's Welding & Mach., 688 F. Supp. 2d 902, 908-09 (N.D. Cal. 2010) ("The defense of laches calls into question whether the trustees demanded payment "[a]s soon as practicable" after the employer's withdrawal … It raises a factual issue that should have been submitted to an arbitrator."); ILGWU National Retirement Fund v. Smart Modes of California, Inc., 735 F. Supp. 103, 107 (S.D.N.Y. 1990) ("the issue of whether the Fund's demand was made "as soon as practicable" is best suited for initial determination by the arbitrator, since it involves resolution of questions of fact, statutory interpretation and requires knowledge of … the "detailed and demanding" procedures for identifying withdrawals and calculating and collecting withdrawal liability.") This may appear to be a harsh result; however, this result was clearly intended by Congress as a key feature of the statutory enforcement scheme for MPPAA. See PACE, 805 F. Supp.2d at 465 ("[R]especting Congress' arbitration scheme has won out over employers' attempts to raise arbitrable defenses in the judicial forum without first arbitrating.") (citing O'Connor v. DeBolt Transfer, Inc., 737 F. Supp. 1430, 1437-38 (W.D. Pa. 1990) and Robbins v. Admiral Merchs. Motor Freight, Inc., 846 F.2d 1054, 1056 (7th Cir. 1988) ("The resounding message [of § 1401] is that arbitration is the preferred method for resolving pension plan disputes and that failure to arbitrate will have adverse consequences.")).

Even if Defendants did properly raise a laches defense, they have presented no evidence to show that Plaintiffs did not provide notice of withdrawal liability "as soon as practicable." The MPPAA does not define "as soon as practicable," which, the Supreme Court explains, evidences "a deliberate legislative choice to afford some flexibility in gathering the information and performing the complex calculations necessary to make [the withdrawal liability] assessment." Bay Area Laundry, 522 U.S. at 205. See also ILGWU Nat'l Retirement Fund, 846 F.2d at 887.

Moreover, in enacting the MPPAA, Congress established a six-year statute of limitations for actions to collect withdrawal liability from employers, 29 U.S.C. § 1451(f)(1), indicating that no strict deadline for notice was intended. I.A.M. Nat'l Pension Fund Plan A v. Cullman Industries, Inc., 640 F. Supp. 1284, 1288 (D.D.C. 1986). Accordingly, several courts have held that claims of withdrawal liability are not barred where the plaintiffs notified the defendant well within the statute of limitations period. See id. (plaintiffs were not barred from bringing an action to collect withdrawal liability, despite a ten month delay in notification, since the defendants were notified within the six-year limitations period); Stormer v. Charlie's Cafe Exceptionale, Inc., No. CIV. 4-87-575, 1988 WL 236418, at *1 (D. Minn. May 4, 1988) (initial withdrawal liability notice sent three years after withdrawal was well within six-year statute of limitations and did not constitute laches).

In sum, Defendants waived laches as a defense to payment by failing to initiate arbitration as required by § 1399(b)(2)(A). The withdrawal liability amount assessed by Plaintiffs remains "due and owing," see § 1401(b)(1), and Plaintiffs are entitled to the withdrawal liability amount as a matter of law. Further, because Defendants failed to make any payments pursuant to the schedule set by Plaintiffs, they are in default pursuant to § 1399(c)(5), and thus liable for the entire amount of withdrawal liability calculated.

Although Defendants have not addressed Plaintiffs' contention that the Yorks are jointly and severally liable for purposes of withdrawal liability, this Court previously found the Yorks personally liable for the debts of Susie's pursuant to § 351.486.3, because they carried on the business of Susie's without taking steps to wind-up, or reinstate the corporation following

dissolution.[1] See Local 513, Int'l Union of Operating Engineers, AFL-CIO v. Susie's Const., Inc., No. 4:10CV1250 RWS, 2010 WL 3724871, at *1 (E.D. Mo. Sept. 17, 2010).[2]

## IV. Conclusion

Because there is no genuine issue of material fact, Plaintiffs are entitled to judgment as a matter of law. The Court will grant summary judgment on the issue of liability and order Plaintiffs to submit a proposed final judgment setting out the total amount due, including damages, interest, attorneys' fees and costs pursuant to § 1132(g)(2), and an accompanying memorandum in support of the proposed judgment amount. Upon receipt and consideration, the Court will enter judgment consistent with its rulings herein.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [11] is **GRANTED** on the issue of liability.

**IT IS FURTHER ORDERED** that Plaintiffs shall file a proposed judgment and memorandum in support of the proposed judgment amount within ten (10) days of the date of this Order. Defendants may file a response within seven (7) days thereafter.

---

[1] Pursuant to § 351.486.3 RS Mo., "[a] corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under § 351.476, and notify claimants under §§ 351.478 and 351.482, and any officer or director who conducts business on behalf of a corporation so dissolved, except as provided in this section shall be personally liable for any obligations so incurred.

[2] Plaintiffs also argue the Yorks are not completely removed from the business for which they obligated themselves to the Pension Fund. In point of fact, on September 14, 2010 Susie York filed Articles of Organization with the Missouri Secretary of State for Ozark Mountain Excavation, LLC, the purpose of which is to "[e]ngage in excavation and construction business," the same purposes covered by the collective bargaining agreements. (Doc. No. 26 at 9-10)

Dated this 28th day of July, 2016.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE